IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

IRONWOOD HOMES, INC., an Oregon                    08-CV-0098-BR
corporation; PATRICK D. HUSKE;
and TAMARA L. HUSKE,                               OPINION AND ORDER

          Plaintiffs,

v.

CRAIG E. BOWEN; PAMELA A. BOWEN,
MICHAEL C. GIBBONS; WELLS FARGO
BANK, N.A.; JAMES M. WILSON;
DONALD W. NELSON; LINKE ENTERPRISES;
INC. (aka FRONTIER LEATHER COMPANY);
STERLING SAVINGS BANK; and ACTION
MORTGAGE COMPANY,

          Defendants.


THOMAS R. BENKE
The Environmental Compliance Organization, LLC
7845 S.W. Capitol Hwy, Ste. 8
Portland, OR 97219
(503) 246-1514

          Attorneys for Plaintiffs Ironwood
          Homes, Inc. (hereinafter referred to
          as Ironwood) and Patrick D. Huske and
          Tamara L. Huske (hereinafter referred
          to collectively as the Huskes)


1  - OPINION AND ORDER

**DANIEL R. SCHANZ**
**TOM C. SPOONER**
Spooner Much & Amman, P.C.
530 Center St., Ste. 722
Salem, OR 97301
(503) 588-5899

>        Attorneys for Defendants Craig E.
>        Bowen and Pamela A. Bowen (hereinafter
>        referred to collectively as the Bowens)

**GEORGE WAYNE MCKALLIP, JR.**
**PATRICK G. ROWE**
Sussman Shank, LLP.
1000 S.W. Broadway, Ste. 1400
Portland, OR 97205
(503) 227-1111

>        Attorneys for Defendant Michael C. Gibbons

**LEE C. NUSICH**
**MICHAEL A. NESTEROFF**
Lane Powell, PC
601 S.W. Second Ave., Ste. 2100
Portland, OR 97204
(503) 778-2119

>        Attorneys for Defendants Wells Fargo
>        Bank, N.A., and James M. Wilson (Wells
>        Fargo/Wilson when referred to collectively)

**BRIAN D. CHENOWETH**
**BROOKS MACINNES FOSTER**
Chenoweth Law Group, PC
510 S.W. Fifth Ave., Fifth Floor
Portland, OR 97204
(503) 221-7958

>        Attorneys for Defendant Donald W. Nelson

2  - OPINION AND ORDER

**DAVID C. WEBER**
**LOREN R. DUNN**
Riddell Williams
1001 Fourth Ave., Ste. 4500
Seattle, WA 98154
(206) 624-3600

       Attorneys for Defendant Linke Enterprises
       of Oregon, Inc., aka Frontier Leather Co.
       (hereinafter referred to as Linke)

**GEANNA N. VAN DESSEL**
**LESLIE R. WEATHERHEAD**
Witherspoon, Kelley, Davenport & Toole
422 West Riverside Ave., Ste. 1100
Spokane, WA 99201
(509) 624-5265

       Attorneys for Sterling Savings Bank
       and Action Mortgage Co.

**BROWN, Judge.**

    This matter comes before the Court on the following
Motions:

    1.  Plaintiffs' Motion (#194) for Denial or Continuance of
Sterling's Motion to Dismiss [or for Summary Judgment],

    2.  Wells Fargo/Wilson's Motion (#211) for FRCP 56(f)
Continuance of Sterling's Motion to Dismiss [or for Summary
Judgment],

3.    Sterling's Motion (#175) to Dismiss [or for Summary Judgment] pursuant to Federal Rules of Civil Procedure 12 and 56,[1]

4.    Sterling's Alternative Motion (#173) to Sever, and

5.    Plaintiffs' Motion (#193) for Partial Default Judgment against Sterling's Equitable Rescission Claim.

For the following reasons, the Court

1.    **DENIES** Plaintiffs' Motion (#194) to Deny or Continue Sterling's Motion to Dismiss [or for Summary Judgment],

2.    **DENIES** Wells Fargo/Wilson's Motion (#211) for Continuance of Sterling's Motion to Dismiss [or for Summary Judgment],

3.    **GRANTS in part** and **DENIES in part** Sterling's Motion (#175) to Dismiss [or for Summary Judgment],

4.    **DENIES as premature** Sterling's Alternative Motion to Sever (#173), and

5.    **DENIES** Plaintiffs' Motion (#193) for Default Judgment against Sterling's Equitable Rescission Claim.

---

[1] The Motions (#194, #211) for denial and for continuance filed by Plaintiffs and Wells Fargo/Wilson address Sterling's Motion (#175) to Dismiss [or for Summary Judgment] pursuant to Federal Rules of Civil Procedure 12 and 56.  Sterling has confusingly identified its Motion to Dismiss as a "Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12 and 56." In their Motions, Plaintiffs and Wells Fargo/Wilson seek a continuance of Sterling's Motion only to the extent that Sterling seeks summary judgment.

## SUBJECT-MATTER JURISDICTION

This Court has subject-matter jurisdiction under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9613(b), as to claims, counterclaims, and crossclaims for indemnification and cost recovery asserted by the parties pursuant to 42 U.S.C. § 9607(a).

The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1967 as to related statutory and common-law claims, counterclaims, and crossclaims asserted by the parties pursuant to Oregon law.

## BACKGROUND

Ken and Hazel Foster owned and operated a farm in Sherwood, Oregon.  When the Fosters operated the farm, it was allegedly used as a disposal site for waste products generated by a nearby tannery operated by Frontier Leather Company (FLC).  The Fosters are deceased and their estates are closed.  After their deaths, parts of the farmland were sold.

Since 1980 the United States Environmental Protection Agency (EPA) and the Oregon Department of Environmental Quality (DEQ) have been investigating the farmland for releases of chromium, lead, and mercury allegedly emanating from FLC's waste products.

5  - OPINION AND ORDER

## THE PARTIES

The parties are landowners, developers, and/or financial institutions who each assert they are not liable to pay the cost of cleaning up the former farmland site or, if they are liable, other parties also are liable to pay those costs. Accordingly, each party seeks either indemnity or contribution from other parties for any liability that party may have.

I.    **Plaintiffs Ironwood and the Huskes.**

The Huskes are sole shareholders of Ironwood.  Ironwood purchased Lot 900 in 2004 to build four single-family homes:  one for Plaintiffs and three for re-sale.

II.   **Defendants Michael Gibbons and the Bowens**.

Gibbons purchased Lot 900 from Hazel Foster in 1983 and sold it to the Bowens in 1987, who sold it to Ironwood in 2004.

Plaintiffs allege Gibbons and the Bowens each knew or should have known that Lot 900 was a hazardous-waste dumping site and should have disclosed that fact to Plaintiffs, but they did not do so.  Accordingly, Plaintiffs allege Gibbons and the Bowens are liable to indemnify Plaintiffs or to contribute to the response costs that Plaintiffs have incurred.  Plaintiffs also contend Gibbons and the Bowens are liable for damages because of their allegedly fraudulent conduct or negligence in failing to investigate, to disclose, and to contain the contamination.

Gibbons and the Bowens separately deny Plaintiffs'
allegations and assert numerous affirmative defenses.

III. **Defendants Linke, Donald Nelson, and Wells Fargo/Wilson**.

Linke is the successor-in-interest to FLC.  Nelson was
Linke's Plant Manager.  Wells Fargo Bank, as successor of First
Interstate Bank, acted as trustee for the Emanuel J. Linke Trust
and the Christina S. Linke Trust and managed the affairs of Linke
in that capacity.  Wilson was Wells Fargo Bank's Trustee
Representative for Linke.

Plaintiffs allege these parties are statutorily liable for
the response costs incurred by Plaintiffs arising from FLC's
transportation of contaminated waste products to the farmland
that ultimately became Lot 900.

Wells Fargo/Wilson and Nelson deny Plaintiffs' allegations
and assert affirmative defenses, counterclaims, and crossclaims.

IV. **Defendants Sterling and Action Mortgage**.

Sterling is a bank headquartered in Spokane, Washington.
Action Mortgage is a subsidiary of Sterling and originates
commercial and residential loans issued by Sterling.
Plaintiffs allege they had a special relationship with Sterling
based on previous loan transactions.  As a result, Ironwood
entered into a Construction Loan Agreement with Sterling to
purchase and to develop Lot 900.  Ironwood also executed a
Hazardous Substance Warranty and Indemnification Agreement in

7  - OPINION AND ORDER

which it agreed to indemnify Sterling against any costs, damages, or losses arising from hazardous substances found on the property.

Plaintiffs allege Les Miller, a Sterling loan officer, reviewed a "Veracheck" analysis of environmental issues in the vicinity of Lot 900 that was obtained for Sterling by Action Mortgage.  The analysis revealed possible environmental contamination in the area.  Nevertheless, Miller allegedly represented to Plaintiffs that the contamination risk on Lot 900 was low.  Plaintiffs allege they purchased Lot 900 based on the information provided by Sterling and now find themselves potentially liable for paying substantial environmental response costs as a result of Sterling's misrepresentations and omissions.

## UNDISPUTED FACTS

The following facts are drawn from undisputed allegations in Plaintiffs' Fourth Amended Complaint; Defendants' Answers, Counterclaims, and Cross-Claims; and undisputed facts drawn from the parties' Concise Statements of Material Fact and Responses filed in support or in opposition to Sterling's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  As noted, Sterling's Motion to Dismiss purports to incorporate a motion for summary judgment under Federal Rule of Civil Procedure 56 as to some of Plaintiffs' claims even though the legal standards differ

as to motions brought under Rule 12 and Rule 56.

**I.   <u>FLC Operations/Ken Foster Farm</u>.**

From 1947 to 1988 FLC operated a tannery in Sherwood, Oregon.  Wells Fargo Bank was Trustee of the Emanuel J. Linke Trust beginning in April 1969 and Trustee of the Christine S. Linke Trust beginning in September 6, 1973.  In June 1988 FLC changed its name to Linke Enterprises of Oregon, Inc. (Linke).

From about 1962 to 1971 FLC sold and transported toxic waste products from its tannery operations to Ken and Hazel Foster, who owned and operated the Ken Foster Farm.  After Ken Foster died, the farm was subdivided for residential development.

**II.   <u>Transactions as to Lot 900</u>.**

In May 1983 Gibbons purchased Lot 900 from Hazel Foster and sold it to the Bowens in 1987.  The Bowens sold it and other parcels of land on the old Ken Foster Farm to Plaintiffs in 2004. Plaintiffs intended to subdivide the land, to remodel the Bowens' residence, and to build three more single-family homes.

**III. <u>Sterling's Environmental Risk Review</u>.**

As they had done with other properties, Ironwood obtained a loan of more than $792,000 from Sterling to purchase Lot 900, and the Huskes guaranteed the loan.  In September 2004 before making the loan, Sterling reviewed a Veracheck analysis obtained by Action Mortgage to identify any environmental risks that might affect Lot 900.  The analysis referred to the "adjacent" Ken

9  - OPINION AND ORDER

Foster Farm as a "suspect [environmental cleanup] site requiring
further investigation." The analysis included statements that
"[t]he subject site and/or nearby properties may pose an
unacceptable amount of risk" and that steps should be taken "to
understand further or mitigate the potential risks" including
obtaining documentation that either "[t]he cleanup is complete
and the case has been assigned a 'no further action' status" or
"[t]he contamination has been delineated and the subject site is
not involved." The analysis also included statements that the
"risk posed by the subject site itself" was "low" because it was
not a government-listed site and that the risk posed by the
"nearby areas" was also "low."

    As noted, Les Miller, a Sterling loan officer who processed
Plaintiffs' construction loan, opined in December 20004 that "the
environmental risk posed to this property [Lot 900] is extremely
low." Miller, however, misidentified Lot 900 as being on the
west side of Murdock Road in Sherwood rather than on its actual
location on the former Ken Foster Farm located on the east side
of the road.

**IV.  <u>2004 Loan Transaction between Sterling and Ironwood</u>.**

    On December 20, 2004, Sterling and Ironwood executed a
Construction Loan Agreement guaranteed by the Huskes whereby
Ironwood borrowed $792,000 from Sterling to purchase and to
develop the "Ironwood Acres Subdivision." The Agreement included

10 - OPINION AND ORDER

the following warranty:

> [N]o . . . hazardous materials . . . have
> been . . . disposed of . . . on the Property,
> and if the same do so exist, [Ironwood and
> the Huskes] covenant[] to cause the same to
> be collected, stored, treated and removed,
> . . . and to immediately pay all of the costs
> thereof . . . . [Ironwood and the Huskes]
> agree[] to defend, indemnify, and hold
> [Sterling] harmless against any and all
> costs, damages, or losses arising from or
> related to the breach of any warranty or
> covenant in this paragraph.

On the same day Ironwood also executed a "Hazardous Substance Warranty and Indemnification Agreement" that included the following provision:

> [F]ollowing all appropriate and due diligent
> inquiry into the condition of the Property
> and the existing and previous ownership,
> uses, and appearances thereof, [Ironwood and
> Patrick Huske have] no knowledge or reason to
> know that any Hazardous Substance[s] . . .
> [have] been . . . disposed of . . . or
> transported to . . . the Property . . . or
> . . . [have] otherwise come to be located on
> the property.

**V.    Loan Modification Agreement (2008).**

On January 22, 2008, more than three years after Ironwood signed the original loan documents with Sterling and after the parties learned about the contamination on Lot 900, Ironwood and Sterling entered into a Loan Modification Agreement guaranteed by the Huskes in which Sterling agreed to increase the original loan amount to cover in part the "site environmental cleanup costs of $241,000." The Agreement included the following provision:

11 - OPINION AND ORDER

**Release of Claims and Waiver.** As part of the consideration for the Loan Extension and increase in the Loan amount, respectively, Borrower and Guarantors hereby release and forever discharge Lender and Lender's employees . . . from any and all actions and causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages, and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, for or because of any manner of things done, omitted, or suffered to be done by any of the Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to this Agreement or the Loan Documents heretofore executed (all of the foregoing hereinafter called the "Released Matters").

## STANDARDS

I. **Dismissal for Failure to State a Claim**.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege sufficient facts to establish a plausible entitlement to relief. *Bell Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

12 - OPINION AND ORDER

> action will not do.  Factual allegations must
> be enough to raise a right to relief above
> the speculative level on the assumption that
> all the allegations in the complaint are true
> (even if doubtful in fact).

*Id.* (internal citations omitted).  *See also Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1949 (2009)("To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted
as true, to state a claim to relief that is plausible on its
face.").  The court must accept as true the allegations in the
complaint and construe them in favor of the plaintiff.
*Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048,
1050 n.2 (9th Cir. 2007).

## II.  <u>**Summary Judgment**</u>.

Federal Rule of Civil Procedure 56(c) provides for summary
judgment if no genuine issue of material fact exists and the
moving party is entitled to judgment as a matter of law.  The
moving party must show the absence of an issue of material
fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir.
2002).  In response to a properly supported motion for summary
judgment, the nonmoving party must go beyond the pleadings and
show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that
a reasonable jury could return a verdict for the nonmoving
party.'"  *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

13 -  OPINION AND ORDER

1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986)).  The court must draw all reasonable
inferences in favor of the nonmoving party.  *Id*.  A mere
disagreement about a material issue of fact, however, does not
preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d
1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims
are factually implausible, that party must come forward with
more persuasive evidence than otherwise would be required.  *Blue
Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)
(citation omitted).

   The substantive law governing a claim or a defense
determines whether a fact is material.  *Addisu v. Fred Meyer,
Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of
a factual dispute would not affect the outcome of the claim, the
court may grant summary judgment.  *Arpin v. Santa Clara Valley
Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


### PLAINTIFFS' MOTION (#194) FOR DENIAL OR CONTINUANCE
### OF STERLING'S MOTION TO DISMISS
### [OR FOR SUMMARY JUDGMENT]

   Plaintiffs move the Court for an order denying or continuing
the briefing schedule of Sterling's Motion to Dismiss [or for
Summary Judgment].  As noted, Plaintiffs seek denial or a
continuance of the briefing schedule of Sterling's Motion only to

the extent that Sterling seeks summary judgment against
Plaintiffs' claims for negligent misrepresentation and negligent
nongratuitous advice.

Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing [a Motion for Summary
> Judgment] shows by affidavit that, for
> specified reasons, it cannot present facts
> essential to justify its opposition, the
> court may:
>
> > (1) deny the motion;
> >
> > (2) order a continuance to enable
> > affidavits to be obtained, depositions
> > to be taken, or other discovery to be
> > undertaken; or
> >
> > (3) issue any other just order.

Plaintiffs assert they have not had the opportunity to
present interrogatories and other discovery requests to Sterling
and need more time to confer with other counsel regarding
discovery.  They also assert Sterling has not produced all
documents in response to subpoenas issued by Wells Fargo/Wilson.

Even though Plaintiffs only seek denial or continuance of
the briefing schedule of Sterling's Motion to the extent that
Sterling moves for summary judgment, Sterling, nevertheless,
opposes Plaintiffs' Motion on the grounds that (1) Sterling's
Motion to Dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6) does not require any discovery for purposes of framing a
response and (2) Plaintiffs have failed to submit in affidavit

form the specific information they seek that is essential to
justify their opposition to that part of Sterling's Motion in
which Sterling seeks summary judgment.

"Federal Rule of Civil Procedure 56(f) provides a device
for litigants to avoid summary judgment when they have not
had sufficient time to develop affirmative evidence." *U.S. v.
Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).
"The facts supporting a Rule 56(f) motion must be set forth
in an accompanying affidavit.  Failure to comply with these
requirements is a proper ground for denying relief." *Id.*
(internal citations omitted).  The district court's decision not
to allow further discovery pursuant to Rule 56(f) "will not be
overturned in the absence of a clear abuse of discretion." *Id*.

As noted, Plaintiffs seek more time for discovery for the
purpose of responding to Sterling's Motion to the extent that
Sterling seeks summary judgment as to Plaintiffs' claims for
negligent misrepresentation and nongratuitous negligent advice.
Specifically, Plaintiffs seek to "elicit from Les Miller and
other Sterling representatives evidence supporting allegations of
a special relationship."  Plaintiffs, however, do not identify
any specific facts that might be elicited through additional
discovery to bolster their contention that they had a special
relationship with Sterling.

16 - OPINION AND ORDER

On this record, the Court concludes Plaintiffs have not
stated good cause for this Court to deny or to continue the
briefing schedule of any of the pending Motions for further
discovery regarding the relationship between Plaintiffs and
Sterling.  The Court, therefore, **DENIES** that part of Plaintiffs'
Motion (#194) in which Plaintiffs seek a continuance of the
briefing schedule of Sterling's Motion to the extent that it is
based on Sterling's request for summary judgment.

## WELLS FARGO/WILSON'S MOTION (#211) FOR
## FRCP 56(f) CONTINUANCE OF STERLING'S MOTION
## TO DISMISS [OR FOR SUMMARY JUDGMENT]

Sterling moves to dismiss [or for summary judgment] as to
Wells Fargo/Wilson's Counterclaims and Crossclaims for indemnity
and contribution as a matter of law pursuant to Rule 12(b)(6).
As noted, however, Wells Fargo/Wilson move to continue the
briefing schedule of Sterling's Motion only to the extent that
Sterling seeks summary judgment.

Wells Fargo/Wilson's Motion is strikingly similar to
Plaintiffs' Motion addressed above and is brought for essentially
the same purpose:  to allow Plaintiffs more time to obtain
discovery regarding the nature and extent of the relationship
between Sterling and Plaintiffs for the purpose of opposing

Sterling's Motion to the extent that Sterling seeks summary judgment.

Accordingly, for the reasons stated above as to Plaintiffs' Motion for Continuance, the Court also **DENIES** Wells Fargo/ Wilson's Motion for Continuance in which Wells Fargo/Wilson seek a continuance of the briefing schedule of Sterling's Motion to the extent that it is based on Sterling's request for summary judgment.

**STERLING'S MOTION (#175) TO DISMISS
[OR FOR SUMMARY JUDGMENT]**

Sterling moves to dismiss Plaintiffs' claims for fraudulent concealment and reckless misrepresentation or, alternatively, for summary judgment on the ground that Plaintiffs released Sterling from any liability arising from these claims; to dismiss or for summary judgment as to Plaintiffs' claims for negligent misrepresentation and nongratuitous negligent advice; to dismiss Wells Fargo/Wilson and Nelson's Crossclaim for contribution; and to dismiss Wells Fargo/Wilson's Crossclaim for indemnity.

I.   **Plaintiffs' Claims**.

    A.   **Fraudulent-Concealment and Reckless-Misrepresentation Claims**.

Plaintiffs bring common-law claims against Sterling for fraudulent concealment and reckless misrepresentation.  Sterling

contends Plaintiffs' allegations supporting these claims are
implausible and moves to dismiss them for failure to state a
claim under Federal Rule of Civil Procedure 12(b)(6).  Although
Sterling refers to Plaintiffs' reckless-misrepresentation claim
for the first time in its Reply, the Court's analysis and ruling
apply to both Plaintiffs' fraudulent-concealment and reckless-
misrepresentation claims for the reasons set forth below.

### 1.  Oregon Law.

To prevail on a fraud claim, a party must plead and
prove (1) a representation, (2) its falsity, (3) its materiality,
(4) the speaker's knowledge of its falsity or ignorance of its
truth, (5) his intent that it should be acted on by the person
and in the manner reasonably contemplated, (6) the hearer's
ignorance of its falsity, (7) his reliance on its truth, (8) his
right to rely thereon, and (9) his consequent and proximate
injury.  *Conzelmann v. N.W.P. & D. Prod. Co.,* 190 Or. 332, 350
(1950).  "Even in the absence of a duty to speak, actions by a
defendant to actively conceal the truth can constitute fraud."
*Wieber v. FedEx Ground Package Sys., Inc.,* 231 Or. App. 469,
484 (2009).

A claim of reckless misrepresentation requires "some
showing of systematic or otherwise aggravated conduct evincing a
high degree of social irresponsibility."  *Weigel v. Ron Tonkin
Chevrolet Co.*, 298 Or. 127, 140 (1984).  "[T]he conduct must go

19 -  OPINION AND ORDER

beyond mere carelessness to a willful or reckless disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility." *Schmidt v. Pine Tree Land Dev. Co.,* 291 Or. 462, 466 (1981).  Oregon courts have primarily addressed reckless-misrepresentation claims to determine whether such conduct, which falls short of intentional fraud, justifies an award of punitive damages. *Id.  See also Weigel*, 298 Or. at 140.

### 2. Plaintiffs' Allegations.

Plaintiffs allege as follows:

Les Miller knew before Ironwood entered into the Construction Loan Agreement with Sterling in December 2004 that the September 2004 Veracheck analysis identified a suspect site "within an 1/8 of a mile of the Bowen parcel."  Patrick Huske asked Miller whether Ironwood needed to make any further inquiry or conduct any further environmental investigation.  Miller responded that no further investigation was necessary "beyond interviewing sellers and visually inspecting the property."

Miller shared the results of the Veracheck analysis with Patrick Huske and told him that the "Bowen parcel was not listed on any governmental site," the analysis "did not indicate the need for further inquiry or for environmental testing of the Bowen parcel," the analysis "did not indicate the subject property posed any environmental risk," the analysis "indicated the risk posed by the Bowen parcel was low," and "the existence

20 - OPINION AND ORDER

of residential development on surrounding properties indicated
that the environmental risk posed by the Bowen parcel was
extremely low."  Contrary to Miller's representations, the
Veracheck analysis of the Bowens' property included the
following:

> The subject site and/or nearby properties may
> pose an unacceptable amount of risk and the
> following additional investigation is
> recommended to understand further or mitigate
> the potential risks:
>
> * * *
>
> The Bank should ask the borrower to provide
> documentation stating that either:
>
>> - The cleanup is complete and the
>> case has been assigned a "no
>> further action" status,
>>
>> or
>>
>> - The contamination has been delineated
>> and the subject site is not involved.

Plaintiffs allege the report "made it obvious that the Bowen
parcel was part of the "suspected site"; *i.e.,* within the area
of land known to be contaminated.  Miller "disregarded [the]
recommendation for further investigation because the area in
which [the contaminated land] is located was surrounded by new
residential development."

Even "after the . . . release of hazardous substances
at the Bowen parcel had become known to [Plaintiffs] and

21  -  OPINION AND ORDER

Sterling," those parties "began discussions . . . about modifying the original loan."  With Sterling's "permission and approval," Plaintiffs "had been using loan funds to investigate and remove the release of hazardous substances from the Bowen parcel." Ironwood "requested a [loan extension] because its environmental response action was not yet finished."  Ironwood "proceeded with its environmental response to protect the mutual interest" of Ironwood and Sterling.

Ironwood and Sterling executed a Loan Modification Agreement on June 1, 2006.  The Huskes guaranteed Ironwood's performance under the Agreement.  The Loan Modification Agreement benefitted Sterling because Sterling charged a loan-modification fee of $2,970.00 and the "loan collateral" was "preserv[ed]" at reduced expense to Sterling.

### 3.  Analysis.

Sterling moves to dismiss Plaintiffs' claims for fraudulent concealment and reckless misrepresentation pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that

> it is not plausible that Sterling would induce Ironwood to borrow money to purchase and develop property that Sterling knew was contaminated and secure its loan with the same property, or to hide a report it told Plaintiffs about and produced when requested.

Sterling Mem. in Support of its Mot. to Dismiss at 7.  In its Reply, Sterling improperly relies on facts in its Statement of Concise Facts (submitted to support its Motion for Summary

22 - OPINION AND ORDER

Judgment) to rebut Plaintiffs' opposition to Sterling's Motion to Dismiss for failure to state a claim.

For purposes of this part of Sterling's Motion brought under Rule 12(b)(6), the Court accepts Plaintiff's allegations as true and construes them in Plaintiffs' favor. *See Intri-Plex Tech., Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).

Based on the foregoing, the Court, exercising its judicial experience and common sense, rejects Sterling's argument that Plaintiffs' claims are implausible. *See Ashcroft v. Iqbal,* 129 S. Ct. at 1950 ("whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Instead the Court concludes as a matter of law that Plaintiffs' allegations are sufficient to state claims against Sterling for fraudulent concealment and reckless misrepresentation under Oregon law.

Accordingly, on this record the Court **DENIES** Sterling's Motion to Dismiss Plaintiffs' claims for fraudulent concealment and reckless misrepresentation.

**B.    Negligent-Misrepresentation Claim**.

In their Seventeenth Claim for Relief, Plaintiffs allege Sterling negligently misrepresented the environmental risks associated with Plaintiffs' proposed land purchase. According

23  -  OPINION AND ORDER

to Plaintiffs, Miller told Plaintiffs that the land parcel they
were interested in purchasing was on the other side of the road
from the contaminated Ken Foster Farm when, in fact, it was
located on the Ken Foster Farm.  Sterling moves to dismiss
Plaintiffs' negligent-misrepresentation claim for failure to
state a claim or, in the alternative, moves for summary judgment
on the ground that there was not a special relationship between
Plaintiffs and Sterling that would support a claim based on
negligence.

    1.  **Oregon Law.**

        "The tort of negligent misrepresentation requires that
one party in a relationship owe a duty 'beyond the common law
duty to exercise reasonable care to prevent foreseeable harm to
the other party.'"  *Conway v. Pac. Univ.,* 324 Or. 231, 237
(1996)(internal citation omitted).  Accordingly, there must be
a "special relationship" between the parties for one of them to
be liable to the other for damages arising from negligent
misrepresentation.  A "special relationship" exists only when

> one party has authorized the other to
> exercise independent judgment in his or her
> behalf and consequently, the party who owes
> the duty has a special responsibility to
> administer, oversee, or otherwise take care
> of certain affairs belonging to the other
> party.

*Id.* at 241.  In *Onita Pacific Corporation v. Trustees of Bronson,*
the court held a special relationship does not exist in a

24 - OPINION AND ORDER

business transaction in which "adversarial parties negotiat[e] at arm's length to further their own economic interests."  315 Or. 149, 161 (1992).

### 2. Plaintiffs' Allegations.

Plaintiffs allege Sterling was "acting at least in part to further the economic interests of Ironwood" in making the loan to Ironwood and Ironwood authorized Les Miller to "exercise independent judgment in Ironwood's behalf and in Ironwood's interests."  Thus, Plaintiffs contend there was a special relationship between Plaintiffs and Sterling.

### 3. Analysis.

Plaintiffs contend their allegations, if proven, are sufficient to establish a special relationship existed between Plaintiffs and Sterling, which supports Plaintiffs' claim for negligent misrepresentation.  If Plaintiffs' allegations that Miller was authorized to exercise independent judgment and was acting to further Plaintiffs' interests are credited as true as required under Rule 12(b)(6), Plaintiffs' allegations are sufficient to defeat Sterling's Motion to Dismiss.  The issue remaining before the Court, therefore, is whether Sterling is entitled to summary judgment or whether Plaintiffs have shown a genuine issue of material fact exists to support their contention that there was a special relationship between them and Sterling.

Sterling asserts "Plaintiffs and Sterling enjoyed

nothing more than a creditor-debtor relationship," and they were "operating at arms length."  Sterling points out that Plaintiffs signed a "Hazardous Substance Warranty and Indemnification Agreement" for the protection of Sterling's interests, and Sterling argues such an agreement would have been unnecessary if Sterling was merely exercising its independent judgment on behalf of Plaintiffs regarding the environmental condition of the property.  In addition, Sterling asserts Plaintiffs executed guarantees of the Loan Modification Agreement with Sterling that they "were not induced to enter into," and such guarantees are evidence of "an 'arms length relationship' between the parties." Sterling also notes the promissory note executed by Plaintiffs explicitly states the loan transaction was "at arms length," and Plaintiffs acknowledge in the Loan Modification Agreement that they consulted their own counsel and did not rely on any warranties or representations by Sterling other than those expressly stated in the Agreement.

Plaintiffs, however, contend their special relationship with Sterling is evidenced by a memorandum authored by Miller in which he states Plaintiffs "will be very willing to steer borrowers to [Sterling]."  Moreover, Plaintiffs assert Miller exercised his own independent judgment on Ironwood's behalf when he "opined the environmental risk posed to this property is extremely low."

26 - OPINION AND ORDER

In addition to the loan documents, Miller's notes regarding the loan transaction, and the environmental issues associated with the property, the record before the Court consists of:

a.  Miller's 2004 memorandum, which predates any knowledge of environmental concerns and reflects Miller was interested in continuing to have Plaintiffs use Sterling as their primary lender;

b.  an April 2006 memorandum from Patrick Huske to Sterling requesting that they "work together for a successful outcome" regarding the contamination issues;

c.  a May 2006 memorandum from Les Miller and John Sears to Doug Kropf, a Commercial Special Assets Administrator for Sterling, in which Miller and Sears recommend a loan extension for six months to allow Plaintiffs "to move forward with cleanup [of the contamination] and [to] market the site"; and

d.  a June 2006 memorandum from Doug Kropf recommending approval of a loan modification in which Sterling would provide "[$60,000] to help protect the value of a [$700,000 loan]" because Plaintiffs "can do a better job in a more cost effective manner than the bank could do" to address the contamination issue."

27 -  OPINION AND ORDER

Although there is an adversarial, arms-length context to the relationship as reflected in the Construction Loan Agreement, the Hazardous Substance Warranty Agreement, and Loan Modification Agreement, (*see Onita,* 315 Or. at 161), a reasonable inference could be drawn from all of the evidence when viewed in the light most favorable to Plaintiffs that Sterling and Plaintiffs developed a relationship over time that extended beyond that of the typical banker/borrower.

The Court, therefore, concludes on this record that genuine issues of material fact exist as to whether there was a special relationship between Sterling and Plaintiffs. Accordingly, the Court **DENIES** Sterling's Motion to Dismiss and, to the extent that Sterling moves for summary judgment, **DENIES** Sterling's Motion for Summary Judgment as to Plaintiffs' claim for negligent misrepresentation.

C. <u>**Nongratuitous Negligent-Advice Claim**</u>.

Plaintiffs also assert Sterling through Miller gave them negligent advice regarding the environmental risks associated with Lot 900 and that Ironwood purchased the Lot in reliance on the adequacy of Sterling's environmental review.

In *Onita* the court held nongratuitous "suppliers of information owe a duty to their clients "to exercise reasonable care to avoid misrepresenting facts." 315 Or. at 165. The

court, however, held liability for a negligent breach of that
duty, as with liability arising from negligent misrepresentation
generally, does not extend to parties who do not enjoy a special
relationship but are, instead, in an "adversarial" relationship
involving "arms length negotiations." *Id.*  Thus, the Court's
analysis of this claim is the same as for Plaintiffs' negligent-
misrepresentation claim.  For the same reasons, the Court **DENIES**
Sterling's Motion for Summary Judgment as to Plaintiffs' claim
for nongratuitous negligent advice.

   **D.    Release.**

   Sterling asserts even if Plaintiffs successfully state
claims against Sterling for fraudulent concealment, reckless
misrepresentation, negligent misrepresentation, and nongratuitous
negligent advice, Plaintiffs released Sterling from liability
arising from those claims.  Although Sterling seeks to dismiss
these claims based on that "release," the Court concludes
Sterling's Motion under Rule 12(b)(6) is an inappropriate vehicle
to raise this issue.  The Court, therefore, deems this part of
Sterling's Motion as one for summary judgment in which Sterling
seeks to establish the absence of any genuine issue of material
fact relating to the existence and validity of the release
agreement on which Sterling relies.

### 1. Oregon Law.

A release agreement will be upheld unless it "has been obtained by misrepresentation or unconscionable conduct." *Raymond v. Feldman,* 120 Or. App. 452, 455 (1993). "A mutual mistake is not a basis on which to avoid a release agreement." *Id.*

### 2. Undisputed Facts.

In the loan documents, Plaintiffs represented to Sterling that they did not know and did not have any reason to know that hazardous substances had been transported and/or disposed of on the property they intended to purchase. Plaintiffs agreed to defend, to indemnify, and to hold Sterling harmless against any costs, damages, or losses that might arise if the property was contaminated.

After the contamination came to light, Sterling agreed to increase the amount of the original loan to provide Plaintiffs with funds for remediation purposes subject to Plaintiffs' agreement "to defend, indemnify, and hold [Sterling] harmless against any and all costs, damages, or losses arising from or related to" arising from the contamination.

### 3. Analysis.

Sterling contends the release, as evidenced by the indemnification and hold-harmless provisions in the loan documents, is enforceable. Plaintiffs contend such a release is

30 - OPINION AND ORDER

unenforceable because it was procured by fraud.  Plaintiffs also assert they did not know of Sterling's prior knowledge and misrepresentation of the contamination risk on Lot 900 until after they filed this action.

Wells Fargo/Wilson support Plaintiffs' position and contend any release agreement is unenforceable because the indemnification and hold-harmless provisions of the loan documents that support such a release are ambiguous and were "not within the parties' contemplation."  Wells Fargo/Wilson also argue there is not any evidence that Plaintiffs intended to release Sterling from liability for misrepresentations that Plaintiffs were unaware of when they allegedly agreed to such a release.  As noted, the Court already has concluded Plaintiffs' allegations that they did not have any knowledge of the contamination at the time they obtained the original construction loan are plausible because Sterling fraudulently concealed potential evidence of the contamination.

On this record, the Court concludes a genuine issue of material fact exists as to whether Plaintiffs only agreed to the hold harmless and indemnification provisions contained in the original loan and subsequent loan modification documents because Plaintiffs were unaware at the time that Sterling, according to Plaintiffs, concealed its knowledge that Lot 900 was possibly contaminated.  If Sterling obtained a release from

31 - OPINION AND ORDER

liability  under those circumstances, its conduct may be
sufficiently unconscionable to render such a release
unenforceable.  If, however, the facts ultimately show that both
sides were operating under a mistake of fact regarding the
contamination at the site when Plaintiffs agreed to the hold
harmless and indemnification provisions, a release based on them
would be enforceable.

Accordingly, the Court **DENIES** Sterling's Motion to the
extent that Sterling moves for summary judgment based on the
release by Plaintiffs of their claims for fraudulent concealment
and/or reckless misrepresentation, negligent misrepresentation,
and nongratuitous negligent advice.

## II.   **Wells Fargo/Wilson's Crossclaims for Contribution and/or Indemnity**.

Wells Fargo/Wilson seek contribution and/or indemnity from
Sterling for any costs or damages that they may incur arising
from Plaintiffs' claims.

### A.   **Contribution**.

Wells Fargo/Wilson assert Sterling is liable to them for
contribution pursuant to Oregon Revised Statute § 31.800 and
under Oregon common law because the primary cause of Sterling's
potential liability for remediation costs or damages is
Sterling's "negligent, reckless, or intentional actions or
omissions."

32 -  OPINION AND ORDER

**1.  Oregon Law.**

"There is no common law right of contribution among joint tortfeasors." *Blackledge v. Harrington,* 291 Or. 691, 694 (1981).  The general right to contribution in Oregon is governed by Oregon Revised Statute § 31.800, which provides:

> Except as otherwise provided in this section,
> where two or more persons become jointly or
> severally liable in tort *for the same injury*
> to person or property . . ., there is a right
> of contribution among them . . . .

Emphasis added.  A party seeking contribution must prove it has a "common liability" with the party from whom the contribution is sought.  *S. Pac. Trans. Co. v. City of Portland,* 75 Or. App. 149, 153 (1985).  The specific right to contribution for remedial action costs in Oregon, however, is set forth in Oregon Revised Statute § 465.257(1), which provides in relevant part:

> Any person who is liable or potentially
> liable under ORS 465.255 may seek
> contribution from any other person who is
> liable or potentially liable under ORS
> 465.255.

Oregon Revised Statute § 465.255(1)(a)-(e) imposes strict liability for remedial action costs on an "owner or operator" of a facility; persons who "caused, contributed to, or exacerbated the release" of contaminants; and "any person who unlawfully hinders or delays entry to, investigation of or removal or remedial action at a facility."

33 -  OPINION AND ORDER

**2.  Analysis.**

Wells Fargo/Wilson contend they are entitled to contribution from Sterling for any liability they may incur for remediation costs under either Oregon common law or Oregon's general contribution statute (Oregon Revised Statute § 31.800) because Sterling is also liable "for the same injury" and, therefore, shares a common liability with Wells Fargo/Wilson. According to Wells Fargo/Wilson, Plaintiffs would not have taken out the loan to purchase the contaminated land, would not have purchased the land, and would not now be liable for remediation costs and other damages if Sterling had not misrepresented the environmental risks to Plaintiffs.

Plaintiffs allege Wells Fargo/Wilson are jointly and severally liable for remediation costs or damages because they are Linke's Trustee and Trustee Manager respectively. Plaintiffs also allege Linke, as FLC's successor, is an owner or operator of the "facility"; *i.e.,* the trucks that transported the contaminants to the Ken Foster Farm. Sterling's liability, on the other hand, is based on its alleged fraud in misrepresenting the likelihood of contamination on the same property, thereby causing injury to Plaintiffs. None of the parties, however, allege Plaintiffs or Sterling are responsible for causing the contamination that injured the farmland. Thus, the grounds for

imposing liability on Wells Fargo/Wilson are not the same as the grounds for imposing liability on Plaintiffs and Sterling. Accordingly, there is not a common liability as between Sterling, Plaintiffs, and Wells Fargo/Wilson.  *See Jensen v. Alley,* 128 Or. App. 673, 677 (1994)(a claim for contribution under Oregon Revised Statute § 31.800 must be based on the existence of "joint liability in tort for the same injury.").

In any event, as noted, Oregon Revised Statute § 465.257 provides the specific right of contribution for the type of liability for remediation costs at issue in this case. "When one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy. *If the two statutes cannot be harmonized, the specific statute is considered an exception to the general statute*."  *Lewis v. CIGNA Ins. Co.,* 339 Or. 342, 350 (2005)(internal quotation marks and brackets omitted)(emphasis added).  Oregon Revised Statute § 465.257 specifically does not allow the contribution that Wells Fargo/Wilson seek because Wells Fargo/Wilson do not assert Sterling in any way "caused, contributed to, or exacerbated the release" of contaminants or "hinder[ed] or delay[ed] entry to, investigation of or removal or remedial action at" the contaminated property.  *See* Or. Rev. Stat. § 465.255(1)(d)

and (e).

The Court concludes on this record that Sterling is not liable to Wells Fargo/Wilson for contribution under common law; Oregon Revised Statute § 31.800, Oregon's general contribution statute; or Oregon Revised Statute § 465.257, Oregon's specific contribution statute relating to remediation costs.

**B.   Indemnity.**

Wells Fargo/Wilson seek indemnity from Sterling for remediation costs or damages for which they may be liable to Plaintiffs as a result of the contamination because their potential liability is "passive" or "secondary" compared to Sterling's liability, which is allegedly "active" and "primary."

**1.   Oregon Law.**

A claimant is entitled to indemnity if (1) it has discharged a legal obligation owed to a third party; (2) the party against whom the indemnity is asserted is also liable to the third party; and (3) between the claimant and the party against whom indemnity is claimed, the obligation should be discharged by the latter. *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.,* 290 Or. 909, 919 (1981). Indemnity "requires that a common duty be mutually owed to a third party." *Citizens Ins. Co. of N.J. v. Signal Ins. Co.,* 261 Or. 294, 297 (1972).

**2.   Analysis.**

Wells Fargo/Wilson's alleged breach of their duty and

36 - OPINION AND ORDER

resulting potential liability to Plaintiffs arises from the
transportation of FLC's contaminants onto property later
purchased by Plaintiffs.  In contrast, Sterling's alleged breach
of duty and resulting potential liability to Plaintiffs arises
from its alleged misrepresentation to Plaintiffs about the extent
of the risk of contamination of the property purchased by
Plaintiffs and the potential economic risks to Plaintiffs if they
proceeded with the purchase in light of the contamination
risk.  Thus, the duties owed to Plaintiffs by Wells Fargo/Wilson
and Sterling were different, and Wells Fargo/Wilson, therefore,
are not entitled to indemnity from Sterling for any liability to
Plaintiffs as a result of breaching their duty.

On this record, the Court finds as a matter of law that
Sterling is not liable to indemnify Wells Fargo/Wilson for their
alleged liability to Plaintiffs.  Accordingly, the Court **GRANTS**
Sterling's Motion to Dismiss Wells Fargo/Wilson's Crossclaims for
contribution and/or indemnity.

## III. **Nelson's Crossclaims.**

Nelson also asserts Crossclaims for contribution against all
other Defendants under Oregon Revised Statute § 465.257 and under
CERCLA, 42 U.S.C. § 9613(f)(1980).

Nelson's alleged liability to Plaintiffs arises from his
role in transporting FLC's contaminated waste products onto the
property later purchased by Plaintiffs.  Nelson asserts all other

Defendants are liable to him for contribution if he is found
liable to Plaintiffs.

**A.  Oregon Law.**

The Court has already stated Oregon law as to contribution.

**B.  Federal Law (CERCLA).**

42 U.S.C. § 9613(f)(1) provides in relevant part:

> Any person may seek contribution from any
> other person who is liable or potentially
> liable under section 9607(a) of this title,
> during or following any civil action under
> section 9606 of this title or under section
> 9607(a) of this title.

Section 9607(a) provides in relevant part:

> Notwithstanding any other provision or rule
> of law, and subject only to the defenses set
> forth in subsection (b) of this section--
>
> (1) the owner and operator of a vessel or a
> facility,
>
> (2) any person who at the time of disposal of
> any hazardous substance owned or operated any
> facility at which such hazardous substances
> were disposed of,
>
> (3) any person who by contract, agreement, or
> otherwise arranged for disposal or treatment,
> or arranged with a transporter for transport
> for disposal or treatment, of hazardous
> substances owned or possessed by such person,
> by any other party or entity, at any facility
> or incineration vessel owned or operated by
> another party or entity and containing such
> hazardous substances, and
>
> (4) any person who accepts or accepted any
> hazardous substances for transport to
> disposal or treatment facilities,
> incineration vessels or sites selected by

such person, from which there is a release,
or a threatened release which causes the
incurrence of response costs, of a hazardous
substance, shall be liable for-
(A) all costs of removal or remedial action
incurred by the United States Government or a
State or an Indian tribe not inconsistent
with the national contingency plan;

(B) any other necessary costs of response
incurred by any other person consistent with
the national contingency plan;

(C) damages for injury to, destruction of, or
loss of natural resources, including the
reasonable costs of assessing such injury,
destruction, or loss resulting from such a
release; and

(D) the costs of any health assessment or
health effects study carried out under
section 9604(I) of this title.

As in the case of Oregon's contribution statutes, "[Section]

113(f) grants an explicit right to contribution to [potentially

responsible parties] with common liability stemming from an

action instituted under §§ 106 or 107(a)." *Kotrous v. Goss-*

*Jewett Co. of N. Cal.,* 523 F.3d 924, 932 (9th Cir. 2008).

**C. Analysis.**

Nelson's duty and his liability for breaching that duty is

the same as that of Wells Fargo/Wilson and, therefore, is not

"in common" with Sterling's duty and potential liability.  The

Court, therefore, concludes Sterling is not liable to Nelson for

contribution under either Oregon or federal law.

Accordingly, the Court **GRANTS** Sterling's Motion to Dismiss

Nelson's Crossclaims for contribution.

## STERLING'S ALTERNATIVE MOTION (#173) TO SEVER

Sterling moves to sever Plaintiffs' claims against Sterling from Plaintiffs' claims against the other Defendants on the ground that Sterling was improperly joined as a defendant under Federal Rule of Civil Procedure 20(a)(2)(A).  Plaintiffs and Wells Fargo/Wilson oppose Sterling's Motion.

Federal Rule of Civil Procedure 20(a)(2)(A) permits joinder of a defendant if "any right to relief is asserted against [it] jointly, severally or in the alternative, with respect to or arising out of the same transaction."  Plaintiffs' joinder of Sterling meets the requirements of Rule 20(a)(2)(A) because Sterling's potential liability to the other Defendants for remediation costs arises from Plaintiffs' purchase of the contaminated property, and the purchase of that property was facilitated by the loan that Sterling made to Plaintiffs.  Under Federal Rule of Civil Procedure 21, however, the Court has discretion to "sever any claim against a party." *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir. 1991).

As is evident from the Court's analysis of Sterling's Motion to Dismiss, the claims asserted by Plaintiffs against Sterling are wholly different from the claims asserted by Plaintiffs against all of the other Defendants.  Moreover, none of the other

40 -  OPINION AND ORDER

Defendants have viable crossclaims against Sterling.  In

addition, Plaintiffs have demanded a jury trial as to all of its

claims against all Defendants.

Based on its review of the issues presented in the pending

Motions, the Court concludes trial of Plaintiffs' claims against

the Defendants other than Sterling will involve complex issues

that are challenging for any jury.  If Plaintiffs' separate

claims against Sterling are presented to the same jury at the

same time, the Court is concerned the jury could be utterly

confused.  The Court, therefore, is presently inclined to sever

for purposes of trial Plaintiffs' claims against Sterling from

trial of the remaining claims against the other Defendants.

This case, however, is still relatively new to this judicial

officer, and the Court concludes it is premature to make a final

severance decision at this stage.  Accordingly, the Court **DENIES**

**as premature** Sterling's Alternative Motion to Sever Plaintiffs'

claims against Sterling.

### PLAINTIFFS' MOTION (#193) FOR DEFAULT JUDGMENT ON THEIR EQUITABLE-RESCISSION CLAIM AGAINST STERLING

In their Twenty-First Claim for Relief, Plaintiffs allege

they are entitled to equitable rescission of each of the loan

agreements they entered into with Sterling based on Sterling's

41 -  OPINION AND ORDER

reckless misrepresentation regarding the risk of contamination on
the property that Plaintiffs intended to purchase.  Plaintiffs
contend they are entitled to a default judgment because Sterling
did not respond to Plaintiffs' Twenty-First Claim in its Motion
to Dismiss.

A default may be entered against a party who "has failed to
plead or otherwise defend."  Fed. R. Civ. P. 55(a).  "Normally,
an appearance in an action involves some presentation or
submission to the court."  *Direct Mail Spec., Inc. v. Edat*
*Computerized Tech., Inc.,* 840 F.2d 685, 689 (9th Cir. 1988).
"But because judgments by default are disfavored, a court
usually will try to find that there has been an appearance
by defendant."  *Id.*

In their Eighteenth Claim, Plaintiffs assert a separate
legal claim for damages based on the same alleged reckless
misrepresentation that is the basis for Plaintiffs' Twenty-First
Claim for equitable rescission.  Sterling moved to dismiss
Plaintiffs' Eighteenth Claim and addressed Plaintiffs'
equitable-rescission claim in a footnote in its Memorandum in
Support of its Motion to Dismiss as follows:

> Plaintiffs' "equitable rescission" claim
> essentially seeks a species of remedy for an
> injury in tort -- plaintiffs assert no breach
> or repudiation of contract.  *See Bollenback*
> *v. Continental Cas. Co,* 243 Or. 498, 414 P.2d
> 802 (1966).

The Court concludes Sterling, albeit cursorily, appears
to have addressed Plaintiffs' claim for equitable rescission

by contending that Plaintiffs are not entitled to rescission
of the loan agreements with Sterling because Plaintiffs did not
allege Sterling breached or repudiated any of them.  Instead
Plaintiffs allege a right to rescission of the contract based on
the tort of reckless misrepresentation.  Regardless of the
efficacy and brevity of Sterling's argument as to Plaintiffs'
claim for equitable rescission, the Court concludes the
fact that Sterling addressed it in some manner constitutes an
appearance to defend against that claim.

On this record, therefore, the Court concludes Sterling made
an appearance to defend against Plaintiffs' Twenty-First Claim
for equitable rescission that was sufficient to preclude entry of
an order of default.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Default
Judgment against Sterling on Plaintiffs' equitable-rescission
claim.


## CONCLUSION

For these reasons, the Court **DENIES** Plaintiffs' Motion
(#194) for Denial or Continuance of Defendant Sterling's Motion
to Dismiss [or for Summary Judgment], **DENIES** Wells Fargo/Wilson's

43 -  OPINION AND ORDER

Motion (#211) for Continuance of Sterling's Motion to Dismiss [or for Summary Judgment], **GRANTS in part** and **DENIES in part** Sterling's Motion (#175) to Dismiss [or for Summary Judgment] pursuant to Federal Rules of Civil Procedure 12 and 56, **DENIES as premature** Sterling's Alternative Motion to Sever (#173), and **DENIES** Plaintiffs' Motion (#193) for Default Judgment as to Sterling's Equitable Rescission claim.

IT IS SO ORDERED.

DATED this 14th day of June, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

44 - OPINION AND ORDER